

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS

XXXXXXXXXXXXX
XXXXXXXXXXXXX
XXXXXXXXXXXXX
GERALD C. MANN
Attorney General

June 8, 1939

Honorable Bascom Giles
Commissioner, General Land Office
Austin, Texas

Dear Mr. Giles:

Opinion No. 0-940
Re: Oil and Gas Lease
executed by Board
for Lease of Prison
Lands to Howard C.
Meyer.

On May 3, 1939, following a meeting of the Board for Lease of Texas Prison Lands, of which you are Chairman, you made a written request for an opinion as to the validity and expiration date of an oil and gas lease executed by the Board for Lease of Texas Prison Lands to Howard C. Meyer, covering a part of the A. McFarland League in Brazoria County, Texas. Your request for an opinion reads as follows:

"Attached is copy of lease executed by the Board for Lease of Texas Prison Lands and Howard G. Meyer of Harris County, on a part of the A. McFarland league in Brazoria County. I would like to have your opinion on this lease, along the lines we have discussed."

The discussion to which you refer in your request for an opinion was a discussion which occurred at the last meeting of the Board for Lease of Prison Lands, in which some doubt was expressed by the members of the Board as to whether or not the oil and gas lease in question had expired, and if so, upon what date said expiration occurred. The members of the Board at such meeting further made the request of this Department to attempt to ascertain upon what date oil and gas in paying quantities was discovered upon the tract of land covered by the lease in question.

Immediately following the adjournment of the meeting of the Board, we requested the proper officials of the Railroad Commission of Texas to ascertain and report to us upon what date the discovery of oil or gas was made upon the land in question. On May 15, 1939, a telegram was received by the Railroad Commission from the Deputy Supervisor in the District in which this lease is located, stating that no potential test had, as yet, been filed, but that certain reports indicated that the well was making twenty-five barrels per hour on a quarter inch choke. However, this report did not state the time upon which the discovery of oil had occurred. A copy of the telegram referred to is attached to this opinion. We have made various attempts since said date to secure further information through the Railroad Commission, but they have not as yet received same. It is our suggestion that the Manager of the Prison Farm upon which the well in question is located be requested to investigate the matter in order to determine the date upon which discovery of oil was made.

In view of your request for an opinion as to the oil and gas lease in question, we have carefully examined the photostatic copy of the lease attached to your letter, and with respect to such lease, you are advised as follows:

Paragraph 14 of the Oil and Gas Lease under examination provides as follows:

"It is expressly understood that this lease is being executed and delivered under and by virtue of the provisions of the Acts of 1930, Forty-first Legislature, Fourth Called Session, Page 16, Chapter 13, and such statute is expressly incorporated in and made a part hereof, and in event of any conflict or inconsistency as between the express provisions hereof, and the provisions of said Chapter 13, it is expressly agreed that the provisions of Chapter 13 shall control."

Paragraph 2 of the lease in question provides:

"It is agreed that this lease shall remain in full force and effect for a term of five (5) years, from the date hereof, and as long thereafter as oil, gas, or cashinghead gas, or either

of them, is produced from said land in commercial
quantities, by the Lessee."

However, Chapter 13 of the Acts of 1930, Forty-
first Legislature, Fourth Called Session, which appears
as Article 6203a of Vernon's Annotated Civil Statutes,
under the authority of which law the lease in question
was executed, provides in Section 8 as follows:

"If the Board shall determine that a satis-
factory bid has been received for said oil and
gas, it shall be filed in the General Land Of-
fice, Whenever the royalty shall amount to as
much as the yearly payment as fixed by the Board,
the yearly payment may be discontinued. If be-
fore the expiration of three years oil and/or
gas shall not have been produced in paying quan-
tities, the lease shall terminate."

And in Section 5 of the same law, which sets
forth the requirements of bids for oil and gas leases,
the following provision is made:

"Every bid shall carry the obligation to
pay an amount not less than One Dollar per acre
for delay in drilling, such amount to be fixed
by the Board in advance of the advertisement,
and which shall be paid every year for five
years, unless in the meantime production in pay-
ing quantities is had upon the land.

The question is thus presented as to whether the
lease in question is for a primary term of five years, con-
ditioned upon the payment of annual delay rentals as pro-
vided in the lease and in the Act, or whether such lease
expired at the termination of three years after its date,
or on April 16, 1937, if oil or gas had not been produced
in paying quantities by said date.

Upon first reading of the Act in question, it
appears that such Act is self-contradictory with respect
to its provisions as to the number of years the lease can
be kept in force by the payment of delay rentals and with-
out the production of oil or gas in paying quantities.
However, there has been established by a long line of de-

cisions the cardinal rule of construction of statutes which requires that: "All the language in every part of a statute shall be given effect if reasonably possible. In other words, effect and meaning should be given to each and every sentence, clause, phrase and word of the Act, as nearly as this can be done consistently with the object andpurpose of the Legislature." 39 Tex. Jur. p. 209, Sec. 112. Another fundamental rule requires that: "A statute shall be construed as a whole and that all of its parts be harmonized, if possible, so as to give effect to the entire Act according to the evident intention of the Legislature." 39 Tex. Jur. 209, Sec. 113.

Keeping in mind the above quoted fundamental rules of statutory construction, we have carefully examined the Act in question with the purpose in view of reconciling and giving effect to every provision of the Act, if such result is reasonably possible. Such result, in our opinion, can reasonably be arrived at by giving full effect to Section 8 of the Act, wherein it is expressly provided that the lease shall terminate after three years if oil or gas shall not have been produced in paying quantities before that date, and at the same time construing and giving effect to the above quoted provision of Section 5 with respect to annual rental payments for a period of five years.

Section 8 expressly provides that the annual rental payment provided for in Section 5 may be discontinued "whenever the royalty shall amount to as much as the yearly payment as fixed by the Board." It is evident, therefore, that, under the Act, the annual rental payment can be required each year for five years, even though oil or gas in paying quantities may have been discovered prior to the expiration of five years. That is to say, discovery of oil or gas in paying quantities before the expiration of five years does not do away with the necessity of making annual rental payments for the remainder of the 5-year period unless the royalty received by the state amounts to "as much as the yearly payment as fixed by the Board."

When the Act is construed and analyzed as above set forth, it becomes possible to reconcile and give effect to both Section 5 and Section 8 of the Act, by a construction of those sections briefly stated as follows:

(1) In any event, and without regard to annual rental payments, a lease expires under Section 8 upon the expiration of three years from its date if oil or gas in paying quantities has not been produced prior to thatdate.

(2) During the first three years of the lease, annual rental payments must be made as provided in Section 5, unless the payment of such rent ls has been excused by actual drilling operations as provided in Section 9.

(3) If oil or gas in paying quantities has been produced prior to the expiration of three years, the annual

rental payments must nevertheless be made for the remainder of the five year period, unless the royalty received by the State amounts to as much as the specified annual payments.

(4) If the royalty received by the State does amount to as much as the specified annual rental payments, the payment of further annual rentals is excused.

Under the above construction of the Act, the lease in question expired at midnight, April 16, 1937, unless oil or gas in paying quantities had been produced before that date, notwithstanding the payment of additional rentals for 1938 and 1939.

In view of such construction of the Act, it becomes unnecessary to determine whether or not oil or gas was discovered or produced within five years from the date of the Act. However, it is, of course, important that you ascertain the exact date upon which oil or gas was in fact produced from the lease in question in order that the records of the Board for Lease of Prison Lands may show such information. Should we obtain such information in the future, it will be forwarded to you.

We trust that the foregoing opinion fully answers your inquiry as to the lease in question. If you desire our opinion on other provisions of the lease, we shall be glad to furnish it upon your request.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Robert E. Kepke
Assistant

REK:BT:jrb

APPROVED:
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

approved opinion committee
By WJF, Chairman